United States District Court
Southern District of Texas
**ENTERED**
September 02, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00141 |
| | § | |
| JERRY SANCHEZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff asserts claims against Defendants under the Eighth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

For the reasons set forth below, the undersigned respectfully recommends that: (1) Plaintiff's § 1983 claims for money damages against **Jerry Sanchez, Dr. Isaac Kwarteng, Dr. Lanette Linthicum, and Bryan Collier** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment; and (2) Plaintiff's Eighth Amendment  and ADA/RA claims against Defendants in their respective individual and official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).   The

undersigned recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

## I.    JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

In this action, Plaintiff sues the following defendants: (1) Senior Warden Jerry Sanchez (Sanchez); (2) Dr. Isaac Kwarteng (Dr. Kwarteng); (3) Dr. Lanette Linthicum (Dr. Linthicum); (4) TDCJ Executive Director Bryan Collier (Collier); and (5) TDCJ.  Plaintiff generally claims that Defendants violated his Eighth Amendment, ADA, and RA rights in connection with the denial of proper treatment and  reasonable accommodations for his "Regional Chronic Pain Syndrome."  (D.E. 1, p. 8).  In his Original Complaint, Plaintiff seeks monetary relief.  (D.E. 1, p. 6).

On July 26, 2022, the undersigned conducted a *Spears*[2] hearing where Plaintiff was given an opportunity to explain his claims.  The following representations were made either

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury.  *See* 28 U.S.C. § 1915(g).

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

in Plaintiff's Original Complaint (D.E. 1) or at the *Spears* hearing.  At the time of the *Spears* hearing, Plaintiff had turned fifty years old.  (D.E. 16, p. 14).

Plaintiff testified that, on or about May 14, 1996, he was struck by a pickup truck while pushing a vehicle.  (D.E. 16, p. 14, 16).  Plaintiff's injuries from the accident required multiple surgeries, and his left leg was ultimately saved.  (D.E. 16, p. 14).  As a result of the surgeries, Plaintiff's left leg is shorter than his right leg due to losing five inches of bone.  (D.E. 16, p. 14, 16).  Plaintiff's "leg length discrepancy" results in him suffering pain all over his body.  (D.E. 16, p. 14-15).  Plaintiff suffers from chronic pain in both feet due to untreated bunions and callouses, his left ankle, left lower leg, left knee, hip, entire back and lower neck.  (D.E 1, p. 9, D.E. 16, pp. 14-18).  Because of his "leg length discrepancy," Plaintiff has a "lateral pelvic tilt" causing him to walk with an awkward gait. (D.E. 16, p. 18).  Plaintiff's condition causes him to have lower back and neck pain which can be severe at times.  (D.E. 16, p. 18).

Plaintiff suffers from "Regional Complex Chronic Pain."  (D.E. 1, p. 9).  Plaintiff testified that, while in the free world, he saw a pain management specialist twice a month. (D.E. 16, p. 19).  Plaintiff was prescribed the narcotic medication Hydrocodone to control the pain.  (D.E. 16, pp. 19-20).  Plaintiff also received a steroid injection once a month to control the knee pain.  (D.E. 16, p. 20).  Plaintiff also saw a foot orthopedic surgeon, who gave Plaintiff a steroid injection in the foot.  (D.E. 16, p. 20).

While in TDCJ custody, Plaintiff has been seen by medical providers who gave Plaintiff various pain medications (Naproxen, Ibuprofen, and Tylenol) which have not worked.  (D.E. 16, pp. 21-22).  Plaintiff also was prescribed anti-psychotic medications used to control pain.  (D.E. 16, pp. 22-23).  Plaintiff states that these medications have side effects which have caused him problems.  (D.E. 16, p. 23).

Plaintiff states that chronic pain limits his ability to walk, stand, bend, stoop, squat, sleep, work, exercise, and sit for short periods of time.  (D.E. 1, p. 9).  Plaintiff testified at the *Spears* hearing that his chronic pain prevents him from getting to the medical department, the cafeteria, and the law library.  (D.E. 16, p. 24).  Plaintiff's chronic pain prevents him from enjoying any type of daily activity.  (D.E. 16, p. 24).  Plaintiff is essentially bedridden.  (D.E. 16, p. 24).  Plaintiff's custody classification level is G5, the highest custody level, due to being charged with assaulting an officer.  (D.E. 16, p. 25).  Plaintiff, therefore, was assigned to a building that is "one notch below" administrative segregation.  (D.E. 16, pp. 25-26).

Plaintiff arrived at the McConnell Unit on October 1, 2021.  (D.E. 16, p. 11).  Since his arrival, Plaintiff has been seen by Dr. Kwarteng on five occasions.  (D.E. 16, p. 28).  The last time Plaintiff saw Dr. Kwarteng occurred on January 5, 2022.  (D.E. 16, p. 28).

According to Plaintiff, Dr. Kwarteng communicated to Plaintiff on one occasion that he had referred Plaintiff to see pain management doctor.  (D.E. 16, p. 12).  Plaintiff then testified that "the pain management doctor determined that [Plaintiff's] pain level or [his] pain situation did not meet the criteria to be seen by him."  (D.E. 16, pp. 12-13).  Plaintiff alleges that doctors from other units had made three referrals for Plaintiff to see

the pain management doctor and that Plaintiff was denied treatment on each occasion based on his pain levels.  (D.E. 16, p. 13).  Dr. Kwarteng communicated to Plaintiff that there was no need for him to make additional referrals to the pain management doctor.  (D.E. 16, p. 13).

While indicating in his *Spears* testimony, as noted above, that Dr. Kwarteng had made one referral to the pain management doctor, Plaintiff later testified at the *Spears* hearing that Dr. Kwarteng had never made such a referral to the pain management doctor. (D.E. 16, pp. 13-14).  Plaintiff instead testified that "it was the three other doctors" from other facilities who made the referrals.  (D.E. 16, pp. 13-14).

Plaintiff claims that Dr. Kwarteng rendered inadequate treatment by failing to try certain other pain medications on TDCJ's "list," such as the narcotic Tylenol 3.  (D.E. 16, pp. 32-33).  Plaintiff explained, however, that Tylenol 3 can only be prescribed for ten days per policy.  (D.E. 16, p. 33).  Plaintiff could not confirm whether he would be prescribed Tylenol 3 for more than ten days by a pain specialist if referred to one.  (D.E. 16, p. 34).

Plaintiff testified that, in addition to being prescribed ineffective pain medications and anti-psychotic medications causing harmful side effects, he was given a cane which was then replaced by a walker.  (D.E. 16, pp. 28-29).  Plaintiff had the walker for two days and then it was confiscated due to his custody level.  (D.E. 16, p. 29).  Plaintiff was unable to use the walker while being restrained.  (D.E. 16, p. 29).  According to Plaintiff, the McConnell Unit only has one wheelchair.  (D.E. 16, p. 30).

Plaintiff claims that Warden Sanchez violated his Eighth Amendment rights because he is responsible for Plaintiff's health and safety at the McConnell Unit and that "[t]he

buck stops with him." (D.E. 16, pp. 30-31). Plaintiff believes that Sanchez has a policy of letting the medical department take care of matters and not taking any action to find out about what is happening with the inmate. (D.E. 16, p. 31-32).

Plaintiff states that Dr. Linthicum is Dr. Kwarteng's supervisor. (D.E. 16, pp. 34-35). Plaintiff wrote Dr. Linthicum about his chronic pain issues, and she responded by advising him to file grievances. (D.E. 16, p. 36). Plaintiff claims that Dr. Linthicum violated his Eighth Amendment rights because she has the authority to override policy prohibiting inmates from being prescribed Tylenol 3 for more than ten days. (D.E. 16, pp. 34-35). Lastly, Plaintiff appears to sue TDCJ Executive Director Collier in his supervisory capacity in connection with his Eighth Amendment claims. (D.E. 16, p. 36).

With respect to his ADA/RA claims, Plaintiff testified that the Social Security Administration ruled Plaintiff to be "100 percent disabled." (D.E. 16, p. 38). Plaintiff claims that he cannot access various services and programs due to his disabilities arising from his chronic pain, such as accessing the medical department, the cafeteria, the law library, and certain church activities. (D.E. 16, pp. 39, 41). Despite his chronic pain, Plaintiff is forced to walk to the Diabetic Clinic for insulin shots. (D.E. 16, p. 39). Plaintiff also has missed "a great, great number of [medical] appointments" because of his chronic pain. (D.E. 16, pp. 39-40).

Plaintiff testified that with respect to his ADA/RA claims seeking monetary relief : (1) Collier is responsible for discrimination by his TDCJ employees; and (2) Dr. Linthicum is responsible for her employees working for the University of Texas Medical Branch (UTMB). (D.E. 16, p. 44). In his Original Complaint, Plaintiff also claims that the TDCJ

6 / 22

violated his ADA/RA rights by failing "to take such steps that are necessary to ensure that Plaintiff is/was not excluded [or] denied" services by reason of his disability.  (D.E. 1, pp. 16-17).

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not

dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable.  *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id.*

## IV.    DISCUSSION

### A.  Plaintiff's § 1983 Claims

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### (1)   Eleventh amendment immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues any individual defendants in their official capacities for monetary damages, those § 1983 claims are barred by the Eleventh Amendment.  Thus, it is respectfully recommended that Plaintiff's claims for money damages against the individual defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### (2)   *Eighth Amendment - Deliberate Indifference*

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05. A prison official acts with deliberate indifference if he or she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. 825, 847 (1994). The official must both be aware of facts from which an inference of substantial risk of serious harm can be drawn and also draw the inference. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Id.*

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir.1999); *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).

Although inadequate medical treatment may rise to the level of a constitutional violation, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Id.* at 303-04. *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

## Warden Sanchez

Plaintiff sues Sanchez in his supervisory capacity as he is responsible for Plaintiff's health and safety at the McConnell Unit in that "[t]he buck stops with him." (D.E. 16, pp. 30-31). Plaintiff further asserts that Sanchez has a policy of letting the medical department take care of matters and not taking any action to find out about what is happening with the inmate. (D.E. 16, p. 31-32).

Plaintiff's allegations, accepted as true, fail to suggest that Sanchez had any personal involvement in treating Plaintiff's chronic pain condition. Plaintiff further provides only conclusory allegations with regard to Sanchez's failure to implement policy allowing him to override decisions made by medical personnel regarding an inmate's medical condition. Plaintiff otherwise fails to identify any unconstitutional policies implemented by Sanchez that were the cause of Plaintiff's injuries due to his chronic pain condition. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against Sanchez in his individual and official capacities be dismissed as frivolous and/or for failure to state a claim.

## Executive Director Collier

Plaintiff appears to sue TDCJ Executive Director Collier in his supervisory capacity in connection with his Eighth Amendment claims. (D.E. 16, p. 36). Plaintiff's allegations, accepted as true, fail to suggest that Sanchez had had any personal involvement in treating Plaintiff's chronic pain condition. Plaintiff otherwise fails to identify any unconstitutional policies implemented by Collier that were the cause of Plaintiff's injuries due to his chronic pain condition. Accordingly, the undersigned respectfully recommends that Plaintiff's

deliberate indifference claims against Collier in his individual and official capacities be dismissed as frivolous and/or for failure to state a claim.

### Dr. Kwarteng

Plaintiff claims that Dr. Kwarteng acted with deliberate indifference to his serious medical needs by rendering inadequate treatment for his chronic pain condition.  Plaintiff cites Dr. Kwarteng's failure to prescribe certain  pain medications on TDCJ's "list," such as Tylenol 3 for his chronic pain.  (D.E. 16, pp. 32-33).   According to Plaintiff, Dr. Kwarteng also violated general prison policy prohibiting inmates from being "subjected to cruel and unusual punishment."  (D.E. 1, p. 13).

Plaintiff alleges the following pertinent facts as to his deliberate indifference claim against Dr. Kwarteng: (1) before arriving at the McConnell Unit, doctors from other units had made three previous referrals for Plaintiff to see the pain management doctor; (2) Plaintiff was denied on each occasion to be treated for chronic pain based on his insufficient pain levels; (3) since arriving at the McConnell Unit on October 1, 2021, Plaintiff was seen by Dr. Kwarteng on five occasions; (4) Plaintiff last saw Dr. Kwarteng on January 5, 2022; and (5) Dr. Kwarteng communicated to Plaintiff that there was no need for him to make additional referrals to the pain management doctor based on Plaintiff being denied treatment for chronic pain on three prior occasions. (D.E. 16, pp. 13, 28).  Plaintiff provides conflicting testimony as to whether Dr. Kwarteng actually made one referral for Plaintiff to see the pain management doctor.  (D.E. 16, pp. 12-14).  Despite his contradictory testimony, Plaintiff's allegations reflect that Dr. Kwarteng ultimately decided that referrals to the pain management doctor were unnecessary.

Plaintiff's allegations, accepted as true, fail to suggest that Dr. Kwarteng acted with wanton disregard to Plaintiff's serious mental health needs.  *See McCormick*, 105 F.3d at 1061.  Rather, his allegations indicate that Dr. Kwarteng saw Plaintiff on several occasions. Dr. Kwarteng's decision not to refer Plaintiff to the pain management doctor does not suggest the requisite deliberate indifference as Dr. Kwarteng was aware that Plaintiff had been denied specialized treatment for chronic pain by the pain specialist on several prior occasions.

In addition, Plaintiff's *Spears* hearing testimony reflects that prison policy limits a medical provider's authority to prescribe Tylenol 3, a narcotic medication drug, to no more than ten days.  (D.E. 16, p. 33).  Plaintiff's allegations do not suggest that Dr. Kwarteng denied him any pain medications, but only that he did not prescribe him his preferred pain medication.  Rather than show deliberate indifference, Plaintiff's allegations reflect that Dr. Kwarteng exercised professional judgment in not prescribing a narcotic medication designed to alleviate temporary and not chronic pain.  *See Feemster v. Chapa*, No. 6:17-CV-39, 2017 WL 6987681, at *8 (S.D. Tex. Dec. 18, 2017) (citing *Youngblood v. Romeo*, 457 U.S. 307, 322-23 (1982)).

While claiming that Dr. Kwarteng should be held responsible for the policy of denying him Tylenol 3 for his chronic pain, the undersigned concludes that Plaintiff's allegations amount only to his disagreement over the course of treatment for his chronic pain condition.  *See Whiting v. Kelly*, 255 F. App'x 896, 899 (5th Cir. 2007) ("Although [plaintiffs] clearly believe that they should undergo additional testing and drug therapies, such disagreement does not give rise to a constitutional claim.") (citations omitted).

14 / 22

Plaintiff's disagreement with the course of treatment provided by Dr. Kwarteng is insufficient to establish a § 1983 claim for deliberate indifference. *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

### Dr. Linthicum

Plaintiff primarily seeks to hold Dr. Linthicum liable in her capacity as Dr. Kwarteng's supervisor.  She further claims that Dr. Linthicum acted with deliberate indifference to his serious medical needs by failing to exercise her authority and override policy prohibiting inmates from being prescribed Tylenol 3 for more than ten days.  (D.E. 16, pp. 34-35).

Plaintiff's allegations, accepted as true, fail to suggest that Dr. Linthicum had any personal involvement in treating Plaintiff's chronic pain condition.  Plaintiff further provides only conclusory allegations with regard to Dr. Linthicum's failure to override policy regarding the limitations for Tylenol 3 prescriptions.  To the extent that Plaintiff complains about Dr. Linthicum's role in denying him Tylenol 3 for chronic pain, Plaintiff's allegations again amount only to his disagreement over the course of treatment for his chronic pain condition which is insufficient to establish an Eighth Amendment deliberate indifference claim.  *See Whiting*, 255 F. App'x at 899; *Gibbs*, 254 F.3d at 549.

Accordingly, the undersigned respectfully recommends that the Court dismiss with prejudice Plaintiff's deliberate indifference claims against Dr. Linthicum in her individual and official capacity as frivolous and/or for failure to state a claim for relief.

### B.  ADA/RA Claims

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, under the RA, "[n]o qualified individual with a disability . . .  shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.  29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private."  *Borum v. Swisher Cty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  Courts utilize the same standards in analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011).  The undersigned, therefore, will analyze Plaintiff's ADA/RA claims as though they were raised as a single claim.  *See Borum*, 2015 WL 327508, at *3.

To establish a valid ADA claim, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by defendants; and (3) such exclusion, denial of

benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). The Fifth Circuit has held that a prison's failure to satisfy the reasonable accommodation requirement may constitute a denial of services or benefits as well as intentional discrimination sufficient to satisfy the second and third prongs of the Title II ADA inquiry. *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014). "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

On the other hand, the ADA is not violated by "a prison's simply failing to attend to the medical needs of disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368,

377 (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposed on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'").  Thus, the ADA does not cover "the mere absence or inadequacy of medical treatment for a prisoner."  *See Whetstone v. Hall*, No. 4:17cv158-JMV, 2018 WL 522778, at *2 (N.D. Miss. Jan. 23, 2018)).  Instead, Plaintiff must show he was treated differently because of his qualified disability. *Nottingham*, 499 F. App'x at 376.

### *(1) Individual Capacity*

Plaintiff sues Sanchez, Dr. Kwarteng, and Dr. Linthicum in their individual capacities with respect to his ADA/RA claims.  A plaintiff cannot sue defendants in their individual capacities under either the ADA or RA.  *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Nottingham*, 499 F. App'x at 376, n.6; *Roberts v. Cooper*, No. 6:22cv102, 2022 WL 2442798, at *4 (E.D. Tex. Apr. 29, 2022); *Payne v. Sutterfield*, No. 2:18-CV-084, 2021 WL 3173902, at *3 (N.D. Tex. Jul. 27, 2021).  Accordingly, the undersigned respectfully recommends that Plaintiff's ADA/RA claims against Sanchez, Dr. Kwarteng, and Dr. Linthicum in their individual capacities be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### *(2) Official Capacity*

Plaintiff brings his ADA/RA claims against TDCJ and the four individual defendants in their official capacities.  The ADA does not "itself prohibit suits against both the State and its agencies." *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL 3966349, at *5

(N.D. Tex. Jun. 29, 2018) (citing 42 U.S.C. § 12131(1)(a)-(b)).  The Fifth Circuit further has held that state officers sued in their official capacities are proper defendants in suits brought under the ADA.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412-14 (5th Cir. 2004) ("Defendants have been sued in their official capacities and are therefore representing their respective state agencies ( which are proper Title II defendants) for all purposes except the Eleventh Amendment.").

Plaintiff testified at the *Spears* hearing that the Social Security Administration ruled him to be "100 percent disabled." (D.E. 16, p. 38).  Plaintiff's allegations, accepted as true, indicate that he suffers from physical impairments that greatly impact and limit his daily life activities.  These allegations are sufficient to state he is a "qualified individual with a disability."

Plaintiff claims that his ADA and RA rights were violated when he was denied reasonable accommodations for his disabilities by not being provided appropriate treatment for his chronic pain condition in the form of referral to a pain specialist as well as being prescribed certain pain medications.  (*See* D.E. 1, pp. 10, 13).  Without these accommodations, Plaintiff contends that he is effectively denied access to the services and activities available to him within the TDCJ system, such as accessing: (1) the medical department so he can obtain his prescribed insulin shot; (2) the cafeteria for meals; (3) the law library; and (4) church activities.  (D.E. 16, pp. 39-41).

Plaintiff's allegations accepted as true, fail to state an ADA/RA claim.  Plaintiff's allegations indicate that his chronic pain condition adversely impacts his ability to participate in various aspects of prison life.  Plaintiff's ADA/RA claim focuses on the

failure of prison officials to provide him with his requested treatment for his chronic pain

so that he participate in all TDCJ programs and services in a relatively pain-free manner.

Regardless how Plaintiff frames his ADA/RA claim, he essentially argues that he is

being denied adequate treatment for his chronic pain condition. Plaintiff provides no

specific facts to indicate how the decision to deny Plaintiff's requested pain medications

and referral to a pain doctor for treatment was motivated by his physical disabilities. Rather

than suggest he has been excluded from such treatment **by reason of** his physical

disabilities, Plaintiff's complaints center on the denial of his requested treatment **for** his

physical disabilities. *See Payne*, 2021 WL 3173902, at *2. "[N]either the ADA nor RA

covers the mere absence or inadequacy of medical treatment for a prisoner." *Id.* (citing

*Bryant*, 84 F.3d at 249 and *Nottingham*, 499 F. App'x at 377).

Accordingly, the undersigned respectfully recommends that Plaintiff's ADA/RA

claims against TDCJ and the individual defendants in their official capacities be dismissed

with prejudice as frivolous and/or for failure to state a claim for relief.

**V.      RECOMMENDATION**

For the reasons stated above, the undersigned respectfully recommends that: (1)

Plaintiff's § 1983 claims for money damages against **Sanchez, Dr. Kwarteng, Dr.**

**Linthicum, and Collier** in their official capacities be **DISMISSED** as barred by the

Eleventh Amendment; and (2) Plaintiff's Eighth Amendment and ADA/RA claims against

**TDCJ** and the individual defendants (**Sanchez, Dr. Kwarteng, Dr. Linthicum, and**

**Collier**) in their respective individual and official capacities be **DISMISSED with**

**prejudice** as frivolous and/or for failure to state a claim for relief pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1).

The undersigned respectfully recommends further that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

Respectfully submitted on September 2, 2022.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).